[No. 3982-0-III.   Division Three.   July 16, 1981.]

MARY ANN TRIPP, ET AL, *Appellants,* v. ETHELYN JEWELL SCOTT, ET AL, *Respondents.*

C. *Raymond Eberle* and *Eberle, Farris & Nelson,* for appellants.

*Richard C. Smith* and *Smith, Scott & Mazzola,* for respondents.

McINTURFF, C.J.—Mary Tripp and Charlene Foster appeal the granting of a summary judgment in favor of Judy Scott for misappropriation of estate assets.

The facts of this case are undisputed. Arthur Long was the natural father of Ms. Scott and the stepfather of Ms. Tripp and Ms. Foster. In March 1975 Mr. and Mrs. Long sold their home in Omak and moved to Spokane to allow Mrs. Long convenient access to the city's medical facilities. Ms. Tripp and Ms. Foster cared for the Longs while they lived in Spokane. In May 1976, 5 months after Mrs. Long's death, Mr. Long decided to move from Spokane to Naches so that his daughter, Ms. Scott, could assume some responsibility for his care.

On June 10, 1976, Mr. Long revised his will and indicated his intent that Ms. Tripp, Ms. Foster, and Ms. Scott share equally in his estate with Ms. Scott serving as executrix. During the spring and summer of 1976, Mr. Long deposited $20,000, the bulk of his estate, in joint bank accounts. Ms. Scott was cosignator on these accounts as a joint tenant with right of survivorship. No personal funds of Ms. Scott were deposited in the accounts.

During his stay in Naches, Mr. Long suffered from a variety of physical ailments and died in January 1978.

After Mr. Long's demise, Ms. Scott was advised by her attorney that the assets in the joint accounts became her

sole property as a joint tenant pursuant to RCW 30.20.015, which provides:

> After any deposit shall be made in a national bank, state bank, trust company or any banking institution subject to the supervision of the supervisor of banking of this state, by any person in the names of such depositor and one or more other persons and in form to be paid to any of them or the survivor of them, such deposit and any additions thereto made by any of such persons after the making thereof, shall become the property of such persons as joint tenants with the right of survivorship, and the same, together with all interest thereon, shall be held for the exclusive use of such persons and may be paid to any of them during their lifetimes or the survivor or survivors. *The making of the deposit in such form shall, in the absence of fraud or undue influence, be conclusive evidence, in any action or proceeding to which either such bank or the surviving depositor is a party, of the intention of the depositors to vest title to such deposit and the additions thereto in the survivor or survivors.*

(Italics ours.)

Ms. Tripp and Ms. Foster then brought an action for misappropriation alleging Ms. Scott failed to carry out her duties as executrix of Mr. Long's estate by not equally dividing estate assets. The trial judge granted Ms. Scott's motion for summary judgment and impliedly interpreted RCW 30.20.015 as creating a conclusive presumption that the intent of the depositor is to vest title of any deposit in the surviving joint tenant. The court also determined there existed no material issue of fact regarding fraud or undue influence by Ms. Scott to overcome this conclusive presumption of intent.

Initially, appellants Tripp and Foster assert the disparity between RCW 30.20.015 and RCW 33.20.030[1] is an unconstitutional denial of equal protection. They argue a conclu-

---

[1]RCW 33.20.030 provides:

"Savings may be received by an association in the name of two or more members as joint tenants with right of survivorship. In such case, payment to either member shall discharge the association from liability upon such savings account

sive presumption of intent is provided for joint accounts in national banks under RCW 30.20.015 whereas RCW 33.20-.030, governing joint accounts in a savings and loan bank, does not provide for a presumption of intent by the depositor. Thus, they contend, since a joint account with right of survivorship performs the same function regardless of which bank in which it is established, there is no rational basis for the difference in which RCW 30.20.015 and RCW 33.20.030 deal with the intent of a depositor in a joint tenancy account.

This assignment of error presumes certain defenses would be available to Ms. Tripp and Ms. Foster under RCW 33.20.030 which are unavailable under the conclusive presumption of intent set forth in RCW 30.20.015. However, a careful reading of RCW 30.20.015 indicates to us that Ms. Scott does not fall within the confines of its conclusive presumption.

██ Generally, at common law, where one deposits money in a bank to one's credit and another as a joint tenant, any question regarding the extent of the surviving tenant's interest is determined from the intention of the depositor, *i.e.,* whether a gift was intended or whether the joint tenancy was established for other purposes. *See* 48 C.J.S. *Joint Tenancy* § 3(e) (1947). "'The creation of an account in the nature of a joint tenancy, with the right of survivorship annexed, depends upon the intent of the parties; . . .'" *In re Matt,* 75 Wn.2d 123, 129, 449 P.2d 413 (1969). When enacting RCW 30.20.015 the legislature, it must be presumed, was aware of established common law rules. *Leonard v. Bothell,* 87 Wn.2d 847, 853, 557 P.2d 1306 (1976). Because the conclusive presumption of intent contained in RCW 30.20.015 is in derogation of the common law it must be strictly construed. *See* 2A C. Sands, *Statutory Construction,* ch. 50 (4th ed. 1973); *deMers v. Oxford,* 28 Wn. App. 770, 772, 626 P.2d 518 (1981).

---

and, upon the death of either of such joint tenants, the association shall be liable only to the survivor or survivors."

■■ RCW 30.20.015 specifically states the making of a deposit in joint tenancy form with right of survivorship shall be conclusive "in any action or proceeding to which either such bank or the *surviving depositor* is a party, of the intention of the *depositors* . . ." (Italics ours.) In construing the statute, words must be given their usual and ordinary meaning.[2] *In re Estate of Ratcliff*, 25 Wn. App. 219, 223, 605 P.2d 1285 (1980). The record is barren of any facts which indicate Ms. Scott was a depositor;[3] absent such evidence, she could not be a "surviving depositor" under the statute and consequently is foreclosed from availing herself of the conclusive presumption. We note the contrast between terms used in the initial portion of the statute and those used in the last section dealing with the conclusive presumption. In the former, the legislature used such terms as, "After any deposit . . . by any person" and "such persons as joint tenants with right of survivorship" while in the latter section, granting the conclusive presumption, the term "surviving depositor" is used. Had the legislature intended the presumption to apply generally to any "surviving joint tenant" it could have so stated.[4] Since

---

[2]The term "depositor" is defined in *Webster's Third New International Dictionary* (1969) as one who places money in a bank.

[3]We need not address those cases where both joint tenants are depositors.

[4]We noted in *Yakima Adjustment Serv., Inc. v. Durand*, 28 Wn. App. 180, 622 P.2d 408 (1981), the primary purpose behind statutes of this nature is to protect the depository institution by insulating it from disputes with the depositors. *See also In re Matt, supra*, where the court stated at page 129:

There is no doubt that the original and still a primary purpose behind statutes of this nature is to protect the depository institution by insulating it from disputes with the depositors. . . . These statutes do so by permitting the institution to pay to one depositor's order absent written instructions to the contrary. In view of this purpose we are satisfied that the legislature intended the conclusive evidence provision to be applicable merely because the bank is a party only when it has a substantial interest in the outcome of the action.

(Citations omitted.)

Additionally we note the recently enacted Substitute Senate Bill 3154, 47th Legislature (1981) Financial Institution Individual Account Deposit Act effective July 1, 1982, repeals RCW 30.20.015. The purpose of the act is stated:

the conclusive presumption does not apply, there is a material question of fact whether Mr. Long intended Ms. Scott to retain all assets from the joint accounts. It is possible to infer from his will an intent that these funds should be equally divided among all three beneficiaries.[5]

Because the foregoing analysis is dispositive of the case, we need not address the remaining issues.

Judgment of the Superior Court is reversed; the case is remanded for trial.

GREEN and MUNSON, JJ., concur.

---

(1) To provide a consistent law applicable to all financial institutions authorized to accept deposits from individuals with respect to payments by the institutions . . .; and

(2) To qualify and simplify the law concerning the respective ownership interests of individuals to funds . . . both as to the relationship between the individual depositors and beneficiaries of an account, and to the financial institution–depositor–beneficiary relationships; and

(3) To simplify and make consistent the law pertaining to payments by financial institutions of deposited funds both before and after the death of a depositor or depositors . . .

Section 10, Ownership of Funds After Death of a Depositor, states:

(3) Funds belonging to a deceased depositor which remain on deposit in a joint account with right of survivorship belong to the surviving depositors *unless there is clear and convincing evidence of a contrary intent at the time the account was created.*

(Italics ours.)

[5]Charlene Foster stated in her deposition: "The only thing he said is that he is making her Executrix and that she was to divide everything between the three of us. He said she would take care of it, so we just assumed she would."